## Grove v. Commercial National Bank

*Paul N. Barna* and *Paul N. Barna, Jr.*, for plaintiff.

*Ralph H. German, Thomas E. Lippard* and *Lawrence E. Moore, Jr.*, for defendant.

*Louis J. Kober*, for additional defendant.

MIHALICH, J., February 28, 1974.—This court held the above-captioned assumpsit action nonjury, and the following represents its findings, reasonings and verdict.

### HISTORY

On July 2, 1971, the guardian-plaintiff filed this suit to recover certain financial losses resulting to the minor plaintiffs by the original defendant's (bank) sale of certain bonds. All of the bonds in question were

purchased by the minor plaintiffs' father, Robert B. Grove (additional defendant). (For clarity and to avoid confusion, plaintiffs will be hereinafter referred to as "children"; the additional defendant will be referred to as "father"; and the original defendant will be referred to as "bank.") Shortly before the sale of the bonds in question, father purchased the bonds for his children. All of the bonds were titled in the name of "Robert B. Grove custodian for (name of child inserted), under the Pennsylvania Uniform Gifts to Minors Act." The custodial characteristic of the Pennsylvania Uniform Gifts to Minors Act was designated on all the bonds.

Father was in the used car business and an active participant in the stock market. In the early part of 1968, father made several loans with the bank. The purpose for these loans, as indicated on the applications and on the Regulation U forms, was for purchase of business inventory, payment of other obligations in other banks and the purchase of real estate. To obtain these loans or to maintain the required percentage of security, father put up some of his own stock and the custodial bonds in question. Father then defaulted on his repayment of the loan and when the value of the collateral fell below the amount of his loans, the bank sold the stock and custodial bonds.

Children now seek to recover the value of their sold custodial bonds from the bank. The bank joined father as additional defendant on the theory of sole or joint liability. Children claim that these custodial bonds were the property of the children, their interest in the bonds was designated on the face of the instruments and it was improper for the bank to accept them as collateral for father's individual loans. Children further claim that the bank is liable for knowingly divesting children of their interest in these bonds. Bank

contends that it is exempt from liability by reason of section 7 of the Pennsylvania Uniform Gifts to Minors Act of June 21, 1957, P. L. 358 (now §5307 of Probate, Estates and Fiduciaries Act of June 30, 1972 (No. 164)), 20 PS §3607 which provides the following:

"No . . . bank . . . dealing with any person purporting to act . . . in the capacity of a custodian, is responsible for *determining* whether . . . any . . . transfer . . . by or  any other act of any person purporting to act in the capacity of custodian is in accordance with or authorized by this act, or is obliged to *inquire* into the validity or propriety under this act of any instrument or instructions executed or given by a person purporting to act . . . in the capacity of a custodian, or is bound *to see* to the application by any person purporting to act  in the capacity of a custodian of any money or other property paid or delivered to him." (Emphasis supplied)

In the alternative, the bank contends that because of father's participation in the series of events which led to the sale of the bonds, he was liable over to the bank or jointly liable with them.

Father contends that he was assured by the bank that these custodial bonds would not be sold but would be utilized only to make his account appear to be properly secured by collateral. Furthermore, father contends he could not be liable because the bank violated Regulation U of the Federal Reserve System relating to loans obtained for the purpose of purchashing or carrying stock. The relevant portion of Regulation U basically provides the following:

"(a) . . . no bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time for stocks in §221.4

(the Supplement to Regulation U), and as determined by the bank in good faith for credit subject to §221.3(s) for any collateral other than stocks.": 12 C. F. R. §221.1.

"(a) In connection with an extension of credit secured directly or indirectly by any stock, the bank shall obtain and retain in its records for at least 3 years after such credit is extinguished a statement in conformity with the requirements of Federal Reserve Form U-1 executed by the recipient of such extension of credit (sometimes referred to as the 'customer') and executed and accepted in good faith by a duly authorized officer of the bank prior to such extension: . . . in determining whether or not an extension of credit is for the purpose specified in §221.1 . . . the bank may rely on the statement executed by the customer if accepted in good faith. To accept the customer's statement in good faith, the officer must (1) be alert to the circumstances surrounding the credit and (2) if he has any information which would cause a prudent man not to accept the statement without inquiry, have investigated and be satisfied that the customer's statement is truthful.": 12 C. F. R. §221.3.

A bank would be in violation of Regulation U if it loaned amounts in excess of the limitations contained in Regulation U for the period involved. The percentage limitation for the period from November 1963, to June 7, 1968, was 30 percent of value of the stock.

The bank contends that the limitations of Regulation U are not applicable because father executed a Regulation U form relative to each loan and the purpose designated by father, which was set forth on the form, indicated that the proceeds of the loans were to be used for purposes other than purchasing or carrying stock.

Father contends that this "purpose information" was not accepted by the bank in good faith. He con-

tends that the small size of the used car business and the large amounts loaned by the bank should have put the bank on notice that the designated purposes were fictitious and this necessitated more careful scrutiny by the bank.

## FINDINGS OF FACT

1. The custodial bonds that serve as the basis of this law suit are as follows:

a. The following bonds were titled in the name of Robert B. Grove, Custodian for Deborah Louise Grove under the Pennsylvania Uniform Gifts to Minors Act:

| Name | Value | Purchase Date | Cost |
|---|---|---|---|
| Data Processing | $2,000 | September 27, 1967 | $2,009.78 |
| Allegheny Airlines | 1,000 | September 30, 1968 | 1,000.32 |
| Reading & Bates | 1,000 | December 24, 1968 | 1,004.58 |

b. The following bonds were titled in the name of Robert B. Grove, Custodian for Robert B. Grove, Jr. under the Pennsylvania Uniform Gifts to Minors Act:

| Name | Value | Purchase Date | Cost |
|---|---|---|---|
| Allegheny Airlines | $1,000 | September 30, 1968 | $1,000.32 |
| Reading & Bates | 1,000 | December 24, 1968 | 1,004.58 |

c. The following bonds were titled in the name of Robert B. Grove, Custodian for Susan Ann Grove under the Pennsylvania Uniform Gifts to Minors Act:

| Name | Value | Purchase Date | Cost |
|---|---|---|---|
| Data Processing | $2,000 | September 27, 1967 | $2,009.78 |
| Allegheny Airlines | 1,000 | September 30, 1968 | 1,000.32 |
| Reading & Bates | 1,000 | December 24, 1968 | 1,004.58 |

d. The following bonds were titled in the name of Robert B. Grove, Custodian for Dennis Alan Grove under the Pennsylvania Uniform Gifts to Minors Act:

| Name | Value | Purchase Date | Cost |
|---|---|---|---|
| Data Processing | $2,000 | September 27, 1967 | $2,009.78 |
| Allegheny Airlines | 1,000 | September 30, 1968 | 1,000.32 |
| Reading & Bates | 1,000 | December 24, 1968 | 1,004.58 |

e. The following bonds were titled in the name of Robert B. Grove, Custodian for James Franklin Grove under the Pennsylvania Uniform Gifts to Minors Act:

| Name | Value | Purchase Date | Cost |
|------|-------|---------------|------|
| Data Processing | $2,000 | September 27, 1967 | $2,009.78 |
| jallegheny Airlines | 1,000 | September 30, 1968 | 1,000.32 |
| Reading & Bates | 1,000 | December 24, 1968 | 1,004.58 |

2. The additional defendant, Robert B. Grove, made eight loans with the original defendant which are as follows:

| Loan No. | Date | Amount |
|----------|------|--------|
| 2 | January 10, 1968 | $10,000 |
| 23 | February 15, 1968 | 23,000 |
| 29 | March 6, 1968 | 35,000 |
| 47 | March 26, 1968 | 2,000 |
| 52 | April 4, 1968 | 12,000 |
| 75 | May 1, 1968 | 66,000 |
| 87 | May 22, 1968 | 15,000 |
| 90 | May 24, 1968 | 15,000 |

Several of the above loans were actually renewals of prior loans.

3. The initial loan obtained by Robert B. Grove (additional defendant) was secured by pledging his own stock and some of the custodial bonds in question.

4. Relative to the subsequent loans, the bank took the custodial bonds as security for the loan, or children's custodial bonds were given in replacement of Mr. Grove's individual stock.

5. Mr. Grove, the additional defendant, executed a Regulation U form with each loan and the purpose designated in said forms was as follows:

Loan No. 2—To purchase inventory of used cars.

Loan No. 23—To pay off present demand loan, plus $13,000 for business inventory.

Loan No. 29—To pay off present loan of $23,000 which was borrowed for business inventory, plus $12,000 additional for business inventory.

Loan No. 47—For the purchase of business inventory consisting of used cars.

Loan No. 52—To pay off present time loan of $2,000 plus $10,000 for inventory and taxes. Inventory consists of used cars.

Loan No. 75—To pay off present loan at Mellon National Bank, Monessen Office, Monessen, Pa.

Loan No. 87—Purchasing property.

Loan No. 90—Payment on loan at Fayette Bank & Trust Company, Uniontown, Pa.

6. The bank accepted these designated purposes in good faith. There were not sufficient circumstances to require the bank to make a more diligent inquiry as to the possible application of Regulation U.

7. The custodial bonds were sold by the Commercial National Bank on or about May 8, 1970.

8. The additional defendant, Robert B. Grove, knew the purpose of Regulation U. It is true Mr. Grove testified that no one had explained Regulation U to him and that he signed all of his loan papers in blank. He even stated that he did not know the bank would sell the stock given as collateral for his loan upon default of the loan payment.

The court finds much to be desired in evaluating the credibility of Mr. Grove. On pages 61 and 62, Mr. Grove admitted making hundreds of loans from a dozen or so banks and in the early part of 1968 borrowed in excess of $500,000. There were apparent inconsistencies in his testimony. For example, on page 49 he states he used some of the custodial bonds to obtain the first loan and on pages 105, 106 and 107, he explicitly denies that he ever got any money for himself by using custodial bonds. On pages 266, he contradicts himself and admits falsifying the purposes in a Regulation U form executed at another bank. Furthermore, he knew that it was improper to use such custodial bonds for security of his individual loans. He admitted that this

was told to him by two different banks prior to the loans in question and he also posted other custodial bonds for a loan in another bank. (Official Transcript p. 255).

9. Mr. Grove knew that the purpose of posting bonds or stocks for loan collateral was for the purpose of obtaining loans and would be sold if the loan was not paid.

10. The parties have stipulated that the damages would be represented by the value of the bonds on the date of sale, plus interest to the time of the verdict.

11. The cost of replacement of bonds as of date sold are as follows: (Transcript pp. 11 through 15).

a. Deborah Louise Grove
| | | |
|---|---|---|
| (1) Data Processing | | $2,009.78 |
| (2) Allegheny Airlines | | 1,000.32 |
| (3) Reading & Bates | | 1,004.58 |
| | Total | $4,014.68 |

b. Robert B. Grove, Jr.
| | | |
|---|---|---|
| (1) Allegheny Airlines | | 1,000.32 |
| (2) Reading & Bates | | 1,004.58 |
| | Total | $2,004.90 |

c. Susan Ann Grove
| | | |
|---|---|---|
| (1) Data Processing | | $2,009.78 |
| (2) Allegheny Airlines | | 1,000.32 |
| (3) Reading & Bates | | 1,004.58 |
| | Total | $4,014.68 |

d. Dennis Alan Grove
| | | |
|---|---|---|
| (1) Data Processing | | $2,009.78 |
| (2) Allegheny Airlines | | 1,000.32 |
| (3) Reading & Bates | | 1,004.58 |
| | Total | $4,014.68 |

e. James Franklin Grove
| | | |
|---|---|---|
| (1) Data Processing | | 2,009.78 |
| (2) Allegheny Airlines | | 1,000.32 |
| (3) Reading & Bates | | 1,004.58 |
| | Total | $4,014.68 |

12. The Commercial National Bank, original defendant, knew or should have known that the proceeds of the loan, supported by the custodial bonds, were not being used for the benefit of the children. The bank personally paid off one of Mr. Grove's individual loans that he had at another bank. The purposes of the loans indicated on the application and Regulation U specifically indicated that the proceeds of these loans were not to be used for the benefit of the children. The bank should have known that Mr. Grove intended to personally use the proceeds of this loan and they should have known this without *determining* whether he had capacity to act as the designated custodian and without *inquiring* into the validity or propriety of his actions and without *seeing* into the actual application of the money.

## CONCLUSIONS OF LAW

1. Regulation U did not apply to the loans because the bank accepted the designated purposes in good faith.

2. Section 7 of the Pennsylvania Uniform Gifts to Minors Act does not require the bank *to determine* proper or authentic capacity of the custodian, nor does it require the bank *to inquire* into the validity or propriety of any instrument, nor is the bank required *to see* to the application of the money for the children's benefit. However, if the bank knows, or should have known that the proceeds of such custodial bonds will not ensue to the benefit or use of the children, without such determination, inquiring or seeing, they are liable for any loss resulting to the children.

3. The additional defendant, Mr. Grove, knowingly misapplied the custodial bonds to his own use and is jointly liable with the Commercial National Bank, original defendant, for the loss resulting to the

children. The basis of this liability is established by section 6(e) of the Pennsylvania Uniform Gifts to Minors Act which was applicable during the times relevant herein and which provides the following:

"(e) A custodian not compensated for his services is not liable for losses to the custodial property, unless they result from his bad faith, intentional wrong-doing or gross negligence, or from his failure to maintain the standard of prudence in investing the custodial property provided in this act": June 21, 1957, P. L. 358 (No. 199) sec. 6, 20 PS §3607.

4. In view of the fact that section 7 of the Pennsylvania Uniform Gifts to Minors Act does not exempt the defendant-bank under the circumstances of this case, the defendant-bank had no authority to accept the custodial bonds as collateral and had no authority to sell these bonds; consequently, they are jointly liable with the additional defendant for the consequential losses to the children.

## DISCUSSION

Regulation U does not preclude the liability of Robert B. Grove for the reasons as aforementioned. Therefore, we need not consider its application in this case.

It is evident that the children have suffered financial loss from the improper actions and illegal actions of their father, Robert B. Grove, and the Commercial National Bank. It is axiomatic that those that cause the financial loss should be responsible. Mr. Grove pledged these custodial bonds for his individual loans knowing that they were subject to being sold upon default. He further knew that it was improper to utilize such custodial bonds as collateral for individual loans. The bank knew, or should have known, that these custodial bonds were not to be accepted as collateral

for individual loans of Mr. Grove. This writer agrees that the bank could have purchased or cashed the custodial bonds directly from Mr. Grove without liability providing they did not know that he was going to apply the proceeds for his individual use. Additionally, the bank could not avoid liability via section 7 of the Pennsylvania Uniform Gifts to Minors Act if circumstances were such that they should have known that he was making such improper use of the proceeds. To rule otherwise would, to a large extent, destroy the intended purpose of the Pennsylvania Uniform Gifts to Minors Act.

## VERDICT

The court finds a verdict in favor of plaintiffs and against Commercial National Bank of Westmoreland County, original defendant, and against Robert B. Grove, additional defendant, in the amount of $18,063.62 plus six percent interest from May 8, 1970. (See court's finding of fact no. 11 for basis of apportionment between minor plaintiffs.)